IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 1:25mj198 |
| | ) The Honorable James E. Boasberg |
| MARSHALL MORGAN, | ) |
| *Defendant*. | ) |

**RESPONSE OPPOSING THE GOVERNMENT'S
RENEWED REQUEST FOR PRETRIAL DETENTION**

After two different courts ordered the Defendant's release, the United States now seeks yet a third bite of the same apple: pretrial detention. But once again, nothing has changed. After twice being released on bond for the same alleged conduct, the record demonstrates that the Defendant, Marshall Morgan, has, and will, take this matter seriously, comply with his conditions of release, and appear in court as required. To avoid that reality, the government's reflexive request for review is based on the same flawed facts and dated criminal history that two other judges have already rejected. Recognizing that its recycled evidence and arguments would likely not carry the day here, the government submitted a last-minute, supplemental motion detailing Mr. Morgan's alleged probation violations for a sentence he successfully completed years ago. But this "new-found" evidence is nothing new at all. It is just more of the same dated criminal history on which the government relies. Because this evidence falls short of demonstrating Mr. Morgan is either a risk of flight or a danger to the community, the Court should once again deny the government's misguided effort to detain him pending trial.

**FACTUAL BACKGROUND**

Mr. Morgan, is a forty-one year old husband and father who lives in the District of Columbia. Despite facing many hardships in his life, he is a "patient, kind, loving, and caring man" that works to provide a safe space for his wife, their family, and children in the community. ECF No. 7-1 at 2.[1]

But instead of addressing who Mr. Morgan is today, the government again points to the mistakes of his past, robotically listing prior arrests, convictions, and warrants. *See* ECF Nos. 5 at 3–4 & 13 at 3–4; *see generally* ECF Nos. 15-1 & 15-2. Sure, Mr. Morgan has two prior felony convictions, one from 2006 that resulted in 8 years of incarceration and another from 2016 that resulted in a term of probation, which he successfully completed. *Id.* at 4. But since then, Mr. Morgan has lived a productive life as a husband and father until he was recently arrested during a traffic stop on August 12, 2025. *See* ECF Nos. 5 at 3–4, & 13 at 3–4 & 1-1 at 1. Mr. Morgan is neither the subject of a wide-ranging drug investigation, nor a participant in a crime of violence. He was arrested for driving without a license. ECF No. 1-1 at 1. During the search incident to arrest for that offense, the officer found a single bag of user-quantity cocaine on his person. *Id.* Upon searching the vehicle, which does not belong to Mr. Morgan, the officer located a firearm under the seat, not on Mr. Morgan's person or in plain view. *Id.*

**PROCEDURAL HISTORY**

Armed with these underwhelming facts, and Mr. Morgan's dated criminal history, the government initiated this case by complaint in D.C. Superior Court, charging him with (1) carrying a pistol without a license outside the home or business, (2) possession with intent to

---

[1] All citations refer to the docket and page numbers assigned by the Court's electronic-docketing system.

2

distribute a controlled substance, and (3) unlawful possession of a firearm with a prior conviction. *See United States v. Morgan*, No. 2025-CF2-009326 (Aug. 12, 2025). After finding probable cause for only Count One, and dismissing Counts Two and Three, the court released Mr. Morgan from custody on August 21, 2025. Although he failed to report for drug testing the following day, Mr. Morgan subsequently reported and tested positive for cocaine on September 2, 2025, the same substance he allegedly possessed during his August 12, 2025, arrest. Two days later, pretrial services conducted a substance use disorder assessment and recommended intensive outpatient treatment.

    Disappointed with Mr. Morgan's release, and with no change in facts, the government initiated this case by criminal Complaint on September 2, 2025, charging him with one count of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Conveniently, the government arrested Mr. Morgan on this new charge on September 10, 2025, when he reported—as required—to pretrial services in connection with his D.C. Superior Court case. The government then moved to detain him pending trial under 18 U.S.C. § 3142(f)(1)(E). ECF No. 5 at 5. Mr. Morgan, in turn, requested his release. ECF No. 7.

    On September 12, 2025, the Honorable Moxila A. Upadhyaya, United States Magistrate Judge, conducted a lengthy detention hearing. After considering the parties' briefs, taking evidence, and hearing argument, Judge Upadhyaya denied the government's motion to detain; ordered Mr. Morgan's release on Monday, September 15, 2025; and entered an Order Setting Conditions of Release. ECF No. 10. The reasoning was nothing short of thorough.

    Although firearms and those involving convicted felons are serious offenses, she recognized that the facts of circumstances of this case are comparatively less troubling than others. For example, the firearm was found under a seat in a car that does not belong to Mr.

3

Morgan, not on his person. Nor was Mr. Morgan carrying the firearm out in public. He did not toss the firearm, and there is no allegation, let alone evidence, that he used the firearm. In addition, the drugs found on Mr. Morgan's person were a user quantity and consisted of the same substance for which he later tested positive, indicating an addiction. Similarly, there was no indicia of drug trafficking activity, so Mr. Morgan was not carrying a firearm as drug dealers are known to do. And the government does not intend to charge him with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). *See* Exhibit ("Ex.") A. Moreover, during his arrest, Mr. Morgan admitted he had drugs on his person and complied with the officer's requests. He did not flee, resist, or respond with violence, all of which weigh in favor of release.

Judge Upadhyaya next found the weight of the evidence was neutral because, although the firearm was found under the driver's seat in the car that he was driving, the car is not registered to Mr. Morgan, and there is no DNA or fingerprint evidence otherwise tying him to the firearm. In other words, this is a circumstantial case based on constructive possession.

Addressing his history and characteristics, Judge Upadhyaya recognized Mr. Morgan's criminal history is very dated, and for years he has lived as a productive husband and father. She also recognized that Mr. Morgan has done well while on pretrial release. Although he had one positive drug test, he was scheduled to go to intensive outpatient treatment, which he was willing and prepared to do. And although Mr. Morgan may have had prior issues while on probation, Judge Upadhyaya concluded that they were technical in nature and never resulted in a sentence of incarceration, weighing in favor of release.

Lastly, Judge Upadhyaya explained the government failed to demonstrate that Mr. Morgan's release on home confinement with a third-party custodian will present an articulable,

4

prospective danger to the community. If Mr. Morgan had carried a firearm, used a firearm, and/ or tossed a firearm, this case may be different. But he did not. So, the facts and circumstances here weigh in favor of release here.

In sum, Judge Upadhyaya found the government failed to demonstrate, by clear and convincing evidence, that Mr. Morgan is a danger to the community, and by a preponderance of the evidence, that he is a risk of flight. Under her subsequent Order Setting Conditions of Release, Mr. Morgan must (1) submit to supervision and report as required; (2) not possess a firearm; (3) not use or possess a narcotic drug or other controlled substance; (4) submit to drug testing; participate in an inpatient or outpatient substance use treatment program; and (5) participate in home incarceration and GPS location monitoring, among other things. ECF No. 10 at 2–3.

Despite these stringent conditions of release, the government reflexively sought this Court's review of the release order. ECF No. 13. In support, the government regurgitated the alleged offense and Mr. Morgan's prior criminal before once again arguing that all four factors weigh in favor of detention. *Compare* ECF No. 5 *with* ECF No. 7. Recognizing, however, that its recycled evidence and arguments would likely not carry the day, the government submitted a last-minute, supplemental motion for review of the release order. ECF No. 15. There, for the first time, the government attached evidence (ostensibly) detailing Mr. Morgan's alleged violations of his Maryland probation. ECF Nos. 15-1 & 15-2. A term of probation that Mr. Morgan successfully completed long ago. ECF No. 5 at 4.

But this "new-found" evidence is nothing new at all. Considering Mr. Morgan was arrested and charged over a month ago, the government had more than enough time to obtain it in preparation for the previous detention hearings. Worse, the government had at least one of

5

these documents before it even filed its initial motion to review the release order. *See* ECF Nos. 13 (filed on Sept. 15, 2025, at approximately 4:50 PM) & 15-2 at 2–10 (dated "9/14/25 6:44 AM"). And the government sat on at least one other "new" document since Tuesday morning, apparently waiting until the last minute to spring it on Mr. Morgan, after the Court scheduled its initial motion for a hearing. ECF Nos. 15 (filed on Sept. 16, 2025, at approximately 9:12 PM) & 15-2 at 20–41 (dated "9/16/25, 8:49 AM"). The Court should not countenance this last-minute gamesmanship.

## LEGAL STANDARD

"'In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *see also Stack v. Boyle*, 342 U.S. 1, 4 (1951) ("Th[e] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction."). As such, "[t]he Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Salerno*, 481 U.S. at 747.

"To deprive someone of their liberty prior to trial, *the government* bears the burden of showing that no condition or combination of conditions can mitigate their risk of flight, based on a preponderance of the evidence, or danger to the community, based on clear and convincing evidence." *United States v. Harrison*, No. 25-00187 (EGS), 2025 WL 2144077, at *4 (D.D.C. July 28, 2025) (emphasis added) (citing *Munchel*, 919 F.3d at 1279–80); *see also* 18 U.S.C. § 3412(f) (articulating a clear and convincing evidence standard for dangerousness determination); *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (articulating a preponderance standard for risk of flight).

To determine whether there are conditions that will reasonably assure a person's appearance and the safety of the community, *see* 18 U.S.C. § 3142(g), courts consider four factors: "(1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Munchel*, 991 F.3d at 1279 (cleaned up). And when the government moves to review a release order under 18 U.S.C. § 3145(a), the Court must consider these factors de novo. *See Harrison*, 2025 WL 2144077, at *4. Considering those factors anew here, the Court should likewise conclude they together weigh in favor of release.

## ARGUMENT

### I. The Alleged Offense.

While firearm offenses are inherently serious, the nature and circumstances of Mr. Morgan's alleged possession of a firearm counsel against detention. As Judge Upadhyaya reasoned, the circumstances here are less troubling than the standard unlawful-possession-of-a-firearm offense. The firearm was under a seat in a car that the government admits does not belong to Mr. Morgan. The firearm was not on Mr. Morgan's person, nor is there any allegation, let alone evidence, that Mr. Morgan ever used the firearm. Further, his arrest stems from a routine traffic stop after an officer observed dark window tint. ECF No. 1-1. The traffic stop was without incident; Mr. Morgan did not flee, nor did he obstruct the officer's mission. *Id.* This conduct is a far cry from more serious unlawful possession cases where the Court *still* concluded that release was appropriate. *See Harrison,* 2025 WL 2144077, at *3–4 (finding release appropriate even when the defendant waived the firearm at people; the firearm had an

"auto-sear" device, making it fully automatic; and ballistics confirmed the firearm was used in a prior shooting).

With no firearm-related conduct to support its motion for detention, the government highlights 3.4 grams of cocaine found on Mr. Morgan's person.  ECF No. 13 at 6.  But the government did not charge Mr. Morgan with a drug offense, and its own expert concluded the quantity did not support charging possession with intent to distribute.  *See* Ex. A.  For good reason.  As Judge Upadhyaya recognized, the quantity of drugs is indicative of a user quantity, which were packed in a single bag rather than numerous bags intended for distribution.  Mr. Morgan also readily admitted that the drugs were on his person and complied with the officer's requests, all weighing in favor of release.

## II.     The Weight of the Evidence.

Likewise the lack of evidence of Mr. Morgan's alleged firearm possession also favors release.  The government has presented no evidence suggesting Mr. Morgan physically possessed the firearm.  Mr. Morgan's guilt therefore hinges on constructive possession, which is a far cry from overwhelming evidence.  To be sure, presence alone is not possession.  And there is no physical evidence, such as DNA or fingerprints, witness statements, or admissions that prove Mr. Morgan was held or possessed the firearm.  Unlike the cocaine, which Mr. Morgan readily admitted was on his person, Mr. Morgan did not mention the firearm to police officers.  As Judge Upadhyaya noted, this creates a reasonable inference of fact that Mr. Morgan did not know the firearm was there.  Accordingly, the weight of the evidence against him is neither strong nor convincing, weighing in favor of release.

### III.     Mr. Morgan's History and Characteristics.

Unsurprisingly, the government points to Mr. Morgan's felony convictions from 2006 and 2017. ECF No. 13 at 6–7. But those dated convictions do not alone define his history and characteristics, and Mr. Morgan's recent history weighs strongly in favor of release. As Judge Upadhyaya recognized, until his recent arrest, Mr. Morgan has not engaged in any alleged criminal conduct for close to ten years, during which he has developed strong ties with his family and the community. *See* ECF Nos. 7-1 & 7-2. Additionally, Mr. Morgan has demonstrated that he is willing and able to comply with pretrial supervision, as verified by his pretrial services officer, and was arrested on this case while checking-in as required. Now, for the first time, the government introduces evidence that Mr. Morgan may have temporarily absconded from his Maryland probation in 2019. ECF No. 15. But even taking that belated submission as true, it is not indicative of Mr. Morgan's subsequent behavior on supervision or probation, which is nothing short of compliant. Indeed, despite the government's laundry list of alleged probation violations, Mr. Morgan nonetheless successfully completed his Maryland probation and has been a productive and involved member of society ever since.

Put simply, Mr. Morgan's recent history and characteristics weigh in favor of release.

### IV.     There is No Danger to the Community.

Lastly, the government has failed to establish that there is an "identified and articulable threat to an individual or the community," should Mr. Morgan continue on pretrial release. Because of the unique procedural history in this case, it is clear that Mr. Morgan is *not* a danger to the community and has shown that he can comply with pretrial conditions. Here, Magistrate Judge Upadhyaya released Mr. Morgan to the custody of his wife, Yisra Morgan, under stringent conditions of release, including home incarceration and GPS location monitoring. *See* ECF No.

10 at 2–3.  Further, he must participate in an inpatient or outpatient substance abuse treatment program, is not permitted to drive a vehicle, and will have bi-weekly in-person hearings with Judge Upadhyaya.  *Id.* at 3.  Beyond conclusory allegations that Mr. Morgan is an unmanageable danger to the community, the government fails to address—let alone explain—why Mr. Morgan's stringent conditions of release, including home incarceration and GPS location monitoring, will not reasonably assure the safety of the community and his appearance.  *See Harrison*, No. 25-00187 (EGS), 2025 WL 2144077, at *4.  This factor thus favors release.

## CONCLUSION

Because Mr. Morgan is neither a risk of flight nor a danger to the community, this Court, like those before it, should reject the government's repeated efforts to detain him pending trial.

Dated:  September 17, 2025

        Respectfully submitted,

        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:    */s/  Christopher L. Bauer*
      John Marston (DC Bar No. 493012)
      Christopher L. Bauer (DC Bar No. 90021873)
      2099 Pennsylvania Avenue, NW, Suite 100
      Washington, DC 20006
      Tel. (202) 747-1900
      Fax (202) 747-1901
      jmarston@sheppardmullin.com
      cbauer@sheppardmullin.com

      ATTORNEYS FOR DEFENDANT
      MARSHALL MORGAN

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on September 17, 2025, I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  September 17, 2025             Respectfully submitted,

                                             */s/ Christopher L. Bauer*
                                             Christopher L. Bauer (DC Bar No. 90021873)